BURGAMI F. DUNHAM *vs.* JOHN M. RACKLIFF.

Penobscot. Opinion August 4, 1880.

*Way. Law of the road. Exceptions. Evidence.*

It is the right of every one to travel on any part of a highway that may suit his taste or convenience not occupied by another, provided no one is meeting him with teams and carriages having occasion or a desire to pass.

Exceptions are to instructions given or to the refusal of requested instructions. When additional instructions are not requested exceptions because they are not given, will not be sustained though they might properly have been given.

The reputation of the driver of a horse and carriage is inadmissible in an action by the owner of another horse killed by a collision therewith, to recover its value.

ON EXCEPTIONS.

Writ dated August 4, 1877. Plea, general issue.

Verdict was for the defendant.

At the trial, William H. Deaborn, called by plaintiff, testified in part as follows:

*Question.*—How long have you known this Dearborn boy who was driving Mr. Rackliff's team? *Answer.*—I have always known him. *Question.*—Do you know what his reputation is as a manager of horses, as a driver?—[Objected to.]

*Mr. Davis, attorney.to plaintiff.*—The great point we make is, that this collision happened through the carelessness and bad management of the boy, and if we can prove what his reputation is as manager of horses it seems to me to be material. *Court.* — I will exclude it.

Charles Deaborn, called by defendant, testified in part as follows :

*Answer.*—I was most eighteen when the accident happened; I had been at,work for Rackliff; came there in April, after my school was done. *Question.*—What had been your business before? *Answer.*—Farming. *Question.*—Had you ever driven stage any ?—[Objected to ; admitted.] *Answer.*—Yes. *Question.* —When? *Mr. Davis.*—We object to this testimony as to his being used to horses, as we were not permitted to show his reputation in that respect. *Court.*—He may answer. *Answer.* — About four years ago, five years ago, when I lived at Newport. *Question.*— Where did you drive? *Answer.*—From Newport to Palmyra, about five miles. *Question.*—At what time did you drive? *Answer.*— I started as soon as the mail train came in at night, and went out and back at night. *Question.*—How many horses? *Answer.*—Sometimes I had one and sometimes three. *Question.*—How long did you continue to drive? *Answer.*—I drove about four years, off and on.

Other questions raised by the exceptions appear in the opinion.

*Josiah Crosby*, for the plaintiff, contended that the evidence offered to show the reputation of the defendant's servant as a driver of horses, should have been admitted, and cited : *Gilman* v. *Eastern R. R. Co.* 13 Allen, 433 ; *Denny* v. *Dana*, 2 Cush. 160 ; *Lee* v. *Kilburn*, 3 Gray, 594.

If this evidence was not admissible then certainly the defendant ought not to have been permitted to show the experience of his servant as a driver of horses. The exclusion of the evidence offered by the plaintiff and the admission of that offered by the defendant operated with a double force to the injury of the plaintiff.

In the contemplation of law, a party is negligent in traveling upon the wrong side of the road in the main thoroughfare of a

village or city in the night time. When a collision occurs at such a time and place, between teams one of which is on the right side, and the other on the wrong side, it is absurd to say that neither party is in fault. R. S., c. 19, §§ 2, 6; Angell on Highways, §§ 333, 337; *Brooks* v. *Hart*, 14 N. H. 307.

Darkness. This element affords the defendant no excuse. He was under the greater necessity to keep on his own side of the road, and negligent if he left it without cause.

*V. A. & M. Sprague*, for the defendant, cited: R. S., c. 19, § 2; *Palmer* v. *Barker*, 11 Maine, 339; *Foster* v. *Goddard*, 40 Maine, 64; *Parker* v. *Adams*, 12 Met. 415; *Kennard* v. *Burton*, 25 Maine, 39; *Moore* v. *Abbot*, 32 Maine, 46; 2 Greenl. Ev. § 219; *Bigelow* v. *Reed*, 51 Maine, 325; *Crosby* v. *M. C. R. R.* 69 Maine, 418; Angell on Highways, 412; 1 Greenl. Ev. § 54; Stevens Ev. 56.

APPLETON, C. J. This is an action for damages alleged to have been caused by a collision between the plaintiff's and the defendant's teams, each being driven by one in their respective employment, and the collision taking place in consequence of the negligence of the defendant's servant.

The court instructed the jury that "both parties had the right to travel. They had a right to travel in the middle of the road, or one side or the other if there was nothing in the way to prevent them. The right of way as prescribed by the statute, applies only when one person is going one way and another the other, and gives the rule by which they shall pass; but if no person is in sight, no person obstructing the way, a man has a right to travel on either side, as he finds convenient."

These are general remarks. They are in perfect accord with the decisions of this and other courts. In *Palmer* v. *Barker*, 11 Maine, 339, MELLEN, C. J., says, "a man may travel in the middle or on either side of the road, when no person is passing or about to pass in an opposite direction." In *Brooks* v. *Hart*, 14 N. H. 310, a case specially relied upon by the learned and able counsel for the plaintiff, the law on this subject is thus stated by WOODS, J. : "It is the right of every one to travel on any part of a highway that may suit his taste or convenience, not

occupied by another, provided no one is meeting him with teams and carriages, having occasion or a desire to pass." "If there is no carriage to intercept the driver, he may pass on what part of the road he may think most convenient." Angell on Highways, § 332. In a recent case in this State, *Foster* v. *Goddard*, 40 Maine, 66, TENNEY, J., uses this language: "A party having before him the entire road, free from carriages or other obstructions, and having no notice of any carriage behind him, in season to stop or to change his course or position, is at liberty to travel upon such parts of the way as suits his convenience or pleasure, and no blame can be imputed to him. This is properly inferable from R. S., c. 26, § 3." In the case at bar there was no carriage in the rear attempting to pass.

The instructions given were unquestionably correct. If additional instructions were deemed desirable, they should have been requested. "In reviewing a case upon a bill of exceptions, it is to be presumed correct instructions on matters of law were given," observes MORTON, J., in *Smith* v. *Livingston*, 111 Mass. 344, "unless the contrary appears." Exceptions are to instructions given, not those that might have been given, but were not requested. *Hunter* v. *Heath*, 67 Maine 507.

The collision took place in the night. In reference to the darkness the charge was as follows: "The accident occurred in the night; it was more or less dark; the testimony varies upon that point; how dark it was, is a matter for you to determine. A greater care should be exercised by both parties if the night was dark. Neither party is responsible for the darkness. The darkness existing, each was respectively and equally bound to exercise care and prudence under the circumstances. Each exercising care and prudence, each must bear the inevitable result of darkness if that alone was the cause. If the accident was caused by the darkness, there being no neglect on the part of the defendant nor on the part of the plaintiff, the plaintiff cannot recover, and as I have already said, in the night greater care is required of one party and of the other in proportion to the greater or less degree of light, and the risk consequent upon the darkness." To this there seems no objection. The darkness was the act of God, and each must abide the consequences arising therefrom.

As to the light from Brown's stable, the instruction was correct. It is not alleged or pretended that either the plaintiff or defendant had anything to do with Brown's stable or the light therein. It is obvious enough that neither party can be held responsible for the acts of a stranger over whom they had no control.

The plaintiff offered to show that the person by whom the defendant's team was driven was reputed to be a careless driver but the evidence was excluded and properly. The issue was as to the negligence of the defendant's servant, at the time when, and the place where the injury occurred. It mattered not how negligent he may have been in the past, if at the time of the collision, there was no negligence nor want of care. The jury were fully instructed that the defendant was responsible for the negligence of his servant, if the collision was the result of such negligence, if not the defendant would not be liable howsoever great may have been his antecedent negligence. The reputation of the servant for skill or want of skill, was not admissible as relevant testimony to the issue tried. *Hays* v. *Millar*, 77 Penn. 238. Reliance is placed upon *Gilman* v. *Eastern Railroad Co.* 13 Allen, 433. But that is not a case in point. That was an action by a servant against the employer for the negligence of a fellow servant. The law is well settled that the master is not liable in such case, unless guilty of negligence in the selection of the servant, negligently causing the injury complained of, and this negligence of the master must be averred in the declaration, and established by proof. *Blake* v. *Maine Central Railroad*, 70 Maine, 63. The negligence in 13 Allen, 433, was the negligence in selecting an unfit servant, not the negligence which occasioned the injury, for which compensation was sought. That could only be proved by what took place at the time of its occurrence. The evidence there offered, was that the employee was reputed to be a common drunkard, for the purpose of showing negligence in the officers of the railroad in employing in a responsible situation, a person of such a character, not to prove the specific act of negligence causing the injury. Here it was offered to prove a specific act of negligence, which it neither proved nor tended to prove.

The evidence of Dearborn that he had previously driven horses, was the evidence of a fact, not of a reputation, which is but hearsay. The defendant however was liable whether he was a skillful or unskillful driver, if on the occasion of the injury he was its negligent cause.

*Exceptions overruled.*

WALTON, DANFORTH, VIRGIN, PETERS, and LIBBEY, JJ., concurred.