## ETTA S. CARR *v.* OLIVER KINNEY.

### NO. 3028.

ARGUED JUNE 30, 1955.                    DECIDED AUGUST 2, 1955.

STAINBACK AND RICE, JJ., AND CIRCUIT JUDGE MCGREGOR IN PLACE OF TOWSE, C. J., DISQUALIFIED.

OPINION OF THE COURT BY STAINBACK, J.

This is an appeal from the verdict and judgment in the circuit court of the first judicial circuit of the Territory of Hawaii in an action for damages for personal injuries by plaintiff-appellant against defendant-appellee wherein the jury returned a verdict for appellee upon which verdict a judgment was duly entered.

Prior to examining the prospective jurors on their voir dire, a preliminary conference was held between counsel and the court in chambers, outside of the presence of prospective jurors, to ascertain what questions, if any, bearing upon the respective jurors' interests in insurance companies could be propounded to the prospective jurors by plaintiff-appellant's counsel. It was admitted at this conference that appellee was insured against loss arising out of automobile accidents by the Home Insurance Company, Limited, an Hawaiian corporation, and the London-Liverpool Group. The trial court had satisfied itself by examining in chambers in another proceeding the secretary of the Home Insurance Company that none of the prospective jurors was a stockholder or employee of any insurance company that had a financial interest in the

outcome of the case; the trial judge thereupon refused to permit appellant to ask any questions relative to the particular insurance companies or to ask any questions using the words "insurance" or "insurance in a liability company," and also refused to permit appellant to ask prospective jurors if any of them were stockholders in, directors, employees or officers of, or interested in any insurance company insuring against automobile liability, or in the Home Insurance Company, Limited, or in the London-Liverpool Group. An exception to the ruling was duly noted. The next day a supplementary jury panel was called and the trial judge again made the same ruling relative to questions along that line.

The sole question raised on this appeal is the court's refusal to permit counsel, in examining jurors on their voir dire, to ask any questions relative to the two insurance companies in which appellee was insured or any questions involving insurance in any form.

Right to a trial by jury, which is guaranteed by the Seventh Amendment to the Constitution of the United States, means, in substance, the right as it existed at common law and requires the essential features of jury trial as known to the common law. The essential elements are that a jury shall consist of twelve *impartial* men, that the jury shall be sworn, that the trial shall be in the presence and under the superintendence of a judge having jurisdiction of the cause and power to instruct them as to the law and advise them in respect to the facts, and that the verdict shall be unanimous. (31 Am. Jur., *Jury*, §§ 7, 8, pp. 556-559.)

To obtain an impartial jury an examination into the qualifications, attitudes and inclinations of jurors before they are impaneled and sworn to try a case is necessary. Only by such examination can the information be obtained to constitute a basis for the exercise of a challenge to

exclude from the jury those who might act from prejudice or interest or without qualification to judge soundly, and wide latitude is permitted an attorney in examining jurors on their voir dire to discover the state of mind of the juror with respect to the matter in hand or any collateral matter reasonably liable to unduly influence. (31 Am. Jur., *Jury*, § 104, p. 635, and § 107, p. 636.)

The overwhelming weight of authority and sound reason is that in the examination of prospective jurors "Generally, counsel may inquire in good faith of prospective jurors, on their voir dire, as to their relationship with an insurance company which may have indemnified the defendant, or according to some cases, whether he has any connection with, or interest in any company writing automobile casualty, liability or indemnity insurance." (Blashfield 9C, Perm. Ed., *Cyclopedia of Automobile Law and Practice*, § 6296, citing cases from many jurisdictions.)

This court in *Choy* v. *Otaguro*, 32 Haw. 543, 545, 546, 547, 548, has set forth the rule and the reasons therefor forcefully and succinctly as follows:

"It is too clear to admit of doubt that ordinarily in the trial of an action for personal injuries, after the jury is sworn, evidence is not admissible tending to show either that the defendant is insured or that he is not insured. It is ordinarily utterly irrelevant to the issues in such a case whether a policy of insurance has been issued; and yet this simple rule, like other rules, has its exceptions." (p. 545.)

"It is too clear, also, to admit of doubt that in the examination of prospective jurors upon the *voir dire,* a plaintiff is entitled to ask all questions which will aid the presiding judge in determining whether a juror should be excused for cause and also *all questions which may enlighten plaintiff's attorney upon the question whether he*

170

*should peremptorily challenge the juror."* (p. 546.) (Emphasis added.)

"If an insurance company is a party defendant there can be no doubt that a challenge for cause should be sustained in the case of any juror who has disclosed by his answers, that he owns stock in the company or that he is an officer or agent of the company or that he is employed by it. * * * If, on the other hand, an insurance company is not a party defendant, but, in a personal injury case, is the insurer of the defendant and if a prospective juror, under those circumstances, discloses that he is an officer, agent or employee of the insurance company, * * * the facts disclosed would certainly justify a plaintiff in exercising his right to a peremptory challenge." (pp. 546, 547.)

"The argument of the defendant proceeds, largely if not wholly, upon the assumption that when jurors are directly informed, or are given cause to believe or to suspect, that a defendant in a personal injury case is insured, immediately those jurors become incapable of performing their duties honestly and impartially and will violate their oaths by deciding too easily in favor of the plaintiff or by awarding the plaintiff a larger amount in damages than they otherwise would. *To adopt such a view would be an insult to the intelligence and the fidelity of jurors and to the jury system as a whole. To adopt such a stand would be, in effect, to declare that in any case in which a casualty insurance company is named as a defendant a just verdict would probably be unattainable.* We have confidence that in a personal injury case, whether the insurance company is or is not made a party defendant, *the jurors,* upon being clearly and emphatically instructed by the court, perhaps during their examination upon the *voir dire* and again at the close of the case, perhaps only at the close of the case, that the sole issue in the case is that of the negligence of the defendant and of the contrib-

utory negligence of the plaintiff, and that they must entirely disregard the question of the existence or the non-existence of insurance, *will be found capable of heeding that instruction and of rendering a verdict wholly unaffected by the facts concerning insurance.* Nowadays it is widely known, by persons who serve on juries as well as by those who do not, that many drivers of automobiles carry insurance, as well as that some others do not carry insurance." (pp. 547, 548.) (Emphasis added.)

"It has been repeatedly stated, in text books and by courts, that the overwhelming weight of authority is in support of the view that jurors upon the *voir dire* may be asked if they own stock in a named insurance company or any casualty insurance company. * * * 56 A. L. R. 1454; 74 A. L. R. 860; 35 C. J. 394. For an elaborate and well-reasoned statement of this view see *Pavilonis* v. *Valentine,* 120 Ohio St. 154." (p. 549.)

*Rains* v. *Rains* (Colo.), 46 P. (2d) 740, 745, in holding that where a defendant in a personal injury case is backed by an indemnity company which is actively conducting the defense and has a direct financial interest in the result, plaintiff's attorney is entitled to wide latitude equal to that in respect to the defendant in examining jurors on their voir dire concerning matters tending to disclose the juror's disqualification or undesirability because of interest in or connection with an indemnity company, the court said:

"But when a personal injury case comes on for trial, the trial court is asked to conceal behind an impenetrable veil of secrecy the indemnity company's interest in the outcome of the litigation * * *. In these days of automobiles, indemnity insurance has assumed vast proportions. * * * Few, if any, jury panels do not include owners of automobiles, and it is folly to attempt to blind ourselves to the fact that most, if not all, jurors know of the existence of indemnity insurance companies and their frequent

connection with automobile accident cases. In such circumstances, it is difficult for the courts to strike a balance between the rights of the plaintiff on the one hand, and those of the defendant and his indemnitor on the other, and fully protect the rights of all. A question put to a prospective juror as to whether he has any interest in or connection with a certain indemnity company would convey to the mind of every intelligent juror the knowledge that an indemnity company was interested financially in the outcome of the litigation; and *yet no one could successfully challenge counsel's right to ask that question.* Vindicator Consol. Gold Min. Co. v. Firstbrook, 36 Colo. 498, 86 P. 313, 10 Ann. Cas. 1108; Cripple Creek Mining Co. v. Brabant, 37 Colo. 423, 87 P. 794; Independence Coffee & Spice Co. v. Kalkman, 61 Colo. 98, 156 P. 135; Tatarsky v. Smith, 78 Colo. 491, 242 P. 971; Bolles v. Kinton, 83 Colo. 147, 263 P. 26, 56 A. L. R. 814." (Emphasis added.)

In *Tucker* v. *Kollias,* 16 S. W. (2d) 649, 223 Mo. App. 367, it was held that the statement by an insurance company's counsel defending a personal injury action that none of the jury panel was interested in the company did not defeat "plaintiff's *right*" to examine jurors respecting matter. On page 651 of this opinion the statement is made that "It has been held repeatedly that, where it is shown that the defendant carries insurance, and that such company is interested in the defense of the case, it is proper to permit counsel for plaintiff to inquire of the jury, on their voir dire, as to their relationship with such insurance company. This is permitted on the theory that it is proper to ascertain fully the relationship of any prospective juror to the parties interested in the outcome of the case so as to enable counsel to exercise intelligently his right to peremptorily challenge. [Citing cases.]" In commenting upon the statement of counsel that no one on the jury panel was interested in, or any member of their family,

directly or indirectly with the insurance company could not deprive plaintiff of his right to examine jurors on their voir dire, the court said: "The members of the panel were duly sworn to answer truthfully each question put to them upon their voir dire, and *plaintiff was entitled to their own answers, under oath,* to the questions presented." (Emphasis added.)

In the present case the trial judge examined the secretary of the insurance carrier, under oath presumably, as to whether any of those appearing upon the jury panel was a stockholder, employee, etc., of the insurance company. Obviously such type of question would not necessarily show the interest, or lack of interest, of a prospective juror as in many cases the title to stock may be in one person while another person may have a beneficial interest in the same. Or, as is so frequently the case in Hawaii, particularly of local insurance companies, other corporations may be large owners of stock in the insurance company and a prospective juror an employee or a stockholder in such holding company. In fact, in the present case, as merely corroborating off-the-record what we already knew—we believe could judicially note—of the widespread prevalence of one Hawaiian corporation owning large numbers of shares in other Hawaiian corporations throughout the Territory, the largest stockholder in the Home Insurance Company, owning practically 40 per cent of the company's outstanding shares, is one of the so-called "Big Five Agencies" and it further appears that two of the employees of this corporation holding stock in the insurance company were listed on the jury panel; further, the second largest stockholder is one of the local trust companies. Were the plaintiff permitted to thoroughly examine the prospective jurors it might readily appear that some one or more of the jury panel might have large interests in such holding companies or be employees thereof or have

pending business with these companies or with the insurance company itself. An examination by the judge of the secretary of the insurance company would fail to disclose such matters while facts disclosed by an examination of the prospective jurors might not legally disqualify the juror, they might at least convince the attorney for the plaintiff that he should peremptorily challenge such interested person or persons.

More than twenty years ago this court stated in *Choy* v. *Otaguro,* 32 Haw. 543, 548, that "* * * it is widely known, by persons who serve on juries as well as by those who do not, that many drivers of automobiles carry insurance * * *." In 1929, at an even earlier date, the Ohio court stated in *Pavilonis* v. *Valentine,* 120 Ohio St. Rep. 154, 159: "It is a matter of common knowledge that automobile owners rather generally carry casualty insurance, and that jurors rather generally own automobiles * * *."

Much more so are these statements true today. Instead of the words "rather generally carry casualty insurance" we can say "almost universally carry casualty insurance." Indeed, in one or more States automobile owners and operators are required by law to carry casualty insurance.

Counsel for appellee, in arguing that neither the name of the insurance company nor the words "casualty company" be mentioned, stated that "Counsel had wide latitude in examining the jurors and could have found out what the jurors' interests, prejudices and biases might be by asking general questions such as the following:

"1. Do you own any stock or have any interest in any corporation, foreign or domestic? Name them.

"2. What has been your employment during the past years?

"3. Do you have any investments? What are they?" etc., etc.

As pointed out in *Pavilonis* v. *Valentine,* 120 Ohio St. Rep. 154, *supra,* at page 161, "Such an examination would necessarily involve the consumption of much time, to the annoyance and expense of the court, the juror, and the parties, would be an *unnecessary* and *unwarranted* imposition upon the juror, and would furnish a potent reason for all persons to avoid jury service." (Emphasis added.)

We might further add that any trial lawyer who would adopt this method of going around Robin Hood's barn and uselessly antagonize or, as many would feel, insult prospective jurors would have left his common sense outside the court room. We are quite confident that counsel who suggests this method of examination would not adopt it himself were his position reversed.

Again, the few courts that hold the contrary rule and do not permit the examination of jurors' interests in or connection with the casualty company insuring the defendant, in their zeal to protect the insurance companies have assumed as a matter of course that knowledge by jurors that the defendant was insured would tend to make such jurors find against the defendant and for larger damages, but such knowledge of insurance may as a matter of fact have the opposite effect. See *Rains* v. *Rains,* 46 P. (2d) 740, 744, where one of the prospective jurors, an automobile dealer, stated he did not think he could be an impartial juror and determine the case according to the law and the evidence because he did have large business dealings and carry policies with the insurance company and he did not want to take a chance of possibly losing the insurance company's business by finding against it.

Counsel for appellee cites *Gilliam* v. *Gerhardt,* 34 Haw. 466, intimating that this is inconsistent with or has overruled *Choy* v. *Otaguro,* 32 Haw. 543, *supra.* In this case this court reversed on the question of negligence because evidence was adduced that the person whose conduct was

involved was careful and prudent on another occasion; it did state that where evidence was placed before the jury that defendant was protected by indemnity insurance that "Technically such evidence is inadmissible because it is irrelevant," and that knowledge of this fact might "create prejudice in the minds of the jury resulting in a miscarriage of justice." This statement, purely dictum by the way, is not at all inconsistent with the *Choy* v. *Otaguro* opinion, but in complete accord therewith. This latter case involved the question of the examination of prospective jurors on their voir dire and the court made the emphatic statement, as repeated in our previous quotation: "It is too clear to admit of doubt that ordinarily in the trial of an action for personal injuries, *after the jury is sworn,* evidence is not admissible tending to show either that the defendant is insured or that he is not insured. It is ordinarily utterly irrelevant to the issues in such a case whether a policy of insurance has been issued; and yet this simple rule, like other rules, has its exceptions." (Emphasis added.)

Should the method be adopted, as suggested by appellee, that such examination should be left entirely to the discretion of the trial judge, it would make for confusion worse confounded as it would compel the plaintiff's lawyer to face an impossible situation. He could not know in advance whether he could obtain the necessary information from the examination of the prospective jurors themselves to secure a fair and impartial jury, and particularly information sufficient to aid him in making peremptory challenges, or whether he would have to make independent investigations of the background, business, social and other connections of the members of the panel.

We believe that the plaintiff has a *right* to examine a prospective juror, as we have heretofore set forth, within all reasonable limits.

Other authorities along this line are:

"The overwhelming majority of the courts sustain the right of counsel for the plaintiff in a personal-injury case, so long as he acts in good faith for the purpose of ascertaining the qualifications of the jurors, * * * to interrogate prospective jurors by one form or another of questions, with respect to their interest in, or connection with, indemnity insurance companies. It has been held in error to deny plaintiff's counsel the right to qualify the jurors in this respect, even though the insurer, on the motion for a new trial, offers an affidavit that none of the jurors are related to or connected with it." (56 A. L. R. 1456.)

To the same effect see annotations in 74 A. L. R. 860.

"Further support for the almost universal view that in personal injury and death actions a plaintiff may, in good faith, interrogate the jury on voir dire as to their, or their relatives' possible connection with, or interest in, liability insurance companies, is found in the following cases: [Here follow citations from 16 States and from Hawaii, the case of *Choy* v. *Otaguro,* 32 Haw. 543.]" (95 A. L. R. 404.)

"Additional support for the *almost universal view* that in personal injury and death actions a plaintiff may, in good faith, interrogate the jurors on voir dire as to their, or their relatives' possible connection with, or interest in, liability insurance companies, is found in the following cases: [Citation of 16 recent decisions from ten States.]" (Emphasis added.) (105 A. L. R. 1330.)

"The plaintiff's right to an impartial, disinterested jury is equal to that of the defendant to have an examination of a jury free from prejudice to his interests. Accordingly, the overwhelming weight of authority is to the effect that a plaintiff may, in good faith, for the purpose of exercising intelligently his right of challenge, interrogate prospective jurors on voir dire examination as

to their connection with or interest in any insurance company interested in the outcome of the trial. This result has followed even though the insurer had no policyholders in that county, or though the plaintiff's attorney knew all the jurors personally." (Appleman, *Insurance Law & Practice,* vol. 21, § 12813, pp. 487-489.)

See also 50 C. J. S., *Juries,* section 275, pages 1046-1050, and the cases therein cited, including the Hawaii case of *Choy* v. *Otaguro,* 32 Haw. 543.

Further citation of authorities would be—to use the Greek words for it—*"piling Pelion on Ossa."*

To repeat what was said in substance regarding the jury system in *Choy* v. *Otaguro, supra,* we quote the following from the case of *Pavilonis* v. *Valentine, supra*: "We have not such a base estimate of the integrity of jurors generally, nor such a contempt for the jury system, as to lead us to believe that jurors, in violation of their oaths, render verdicts pro and con according to their suspicions that by their verdict a cause of action may or may not arise against an insurance company; nor are we willing to pronounce a judgment which would condemn a system that is ingrafted upon the government by its fundamental law and has been employed by civilized nations since a period of which history has no record, a system which the Supreme Court of the United States has twice eulogized as 'twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and

safer conclusions from * * * facts thus occurring than can a single judge,' *Sioux City & P. Rd. Co.* v. *Stout*, 84 U. S. (17 Wall), 657, 664 (21 L. Ed., 745) ; *Davidson Steamship Co.* v. *United States*, 205 U. S., 187, 191, 27 S. Ct., 480, 51 L. Ed., 764."

Case reversed and remanded for further proceedings in accordance with this opinion.

*H. M. Greenstein* (also on the briefs) for appellant.

*W. F. Quinn* (*T. M. Waddoups* and *Robertson, Castle & Anthony* on the brief) for appellee.

### CONCURRING OPINION OF RICE, J.

Not only do I concur in the foregoing opinion of the court, but I also have the view that *Choy* v. *Otaguro*, 32 Haw. 543, established—and by virtue thereof and of the provisions of section 1 of the Revised Laws of Hawaii 1945 there was in effect at the time of the trial of the instant case of *Carr* v. *Kinney* and applicable therein—the rule of law in this Territory of Hawaii that, on voir dire, jurors may be interrogated "as to their, or their relatives' possible connection with, or interest in, liability insurance companies," or any such, with which a defendant may be insured and which therefore—although not a named party —may be affected financially by a verdict adverse to the defendant. Also, the rule thus established and effective in this jurisdiction should have been applied and should be, as it now is, sustained, not only because it would be inconsistent to fail to do so without stronger showing— which has not been made—for its revocation than was made for its establishment or adoption in the *Choy* v. *Otaguro* case, *supra;* also because I am convinced that the said rule of law is in accord with the modern trend as enunciated in judicially recognized text books and cyclopedia and supported by numerous decisions of the

highest courts of other jurisdictions, cited in the opinion of this court, *supra.*

Careful reading of the opinions in the two cases of *Choy* v. *Otaguro, supra,* and *Gilliam* v. *Gerhardt,* 34 Haw. 466, reveals nothing inconsistent with each other and no overruling of the former by the latter, but should impress the reader that the rule established or adopted in the *Choy* v. *Otaguro* case and sustained in the present case of *Carr* v. *Kinney* is applicable only to the examination of prospective jurors on their voir dire and, as indicated in the case of *Gilliam* v. *Gerhardt* and as clearly stated previously in *Choy* v. *Otaguro,* "* * * evidence is not admissible tending to show either that the defendant is insured or that he is not insured." This has been emphasized in our opinion of the court in this present case of *Carr* v. *Kinney.* However, the re-emphasis is made, despite the redundance, because of the importance that all concerned be advised of and bear in mind the difference between the permissible mention of an insurance company in the interrogation of prospective jurors on their voir dire and the inadmissibility— after a jury is sworn to try the case—of testimony as to whether a defendant is or is not insured.